UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

RANDALL WAYNE WOMACK, JR.  #359074   CIVIL ACTION NO. 16-cv-0185

VERSUS                                                                JUDGE FOOTE

STATE OF LOUISIANA                                      MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

### Introduction

Randall Wayne Womack, Jr. ("Petitioner") and three other men participated in a home invasion robbery of two victims. A Bossier Parish jury convicted Petitioner of armed robbery (10-2 vote) and attempted armed robbery (unanimous verdict). Petitioner was sentenced to 50 years for the armed robbery and 15 years (concurrent) for the attempted armed robbery. His convictions and sentences were affirmed on appeal. State v. Womack, 109 So.3d 418 (La. App. 2d Cir 2013), writ denied, 123 So.3d 163 (La.). He also pursued claims in a state post-conviction application. He now presents those post-conviction claims in his federal habeas corpus petition. For the reasons that follow, it is recommended that his petition be denied.

### Background Facts

Jose and Orlando Tecciau worked for a veterinarian on his Holly Hills farm in Plain Dealing, and they rented a home on or near the farm. They were inside their home one evening when Petitioner and three other men—Dillon Murphy, Joshua Lopez, and David Weeks—arrived. Lopez waited in the car while Petitioner and the two other men armed

themselves with weapons and entered the house. They kicked open a bedroom door, found the victims, and demanded money. Murphy grabbed a wallet from the dresser, and the men fled. Murphy and Lopez left in the vehicle, while Petitioner and Weeks fled on foot. The victims managed to fire a couple of shots at the fleeing robbers, but no one was hit.

The victims called their employer, who lived nearby, and told him they had been robbed. The employer drove to the house, saw the robbers' vehicle, and followed it until the men abandoned it on a dead-end street. Police found a wallet in the center console of the vehicle; Petitioner's identification was inside the wallet.

A motorist reported to a deputy that a man was walking on Old Plain Dealing Road and attempting to hitchhike. The officers spotted the hitchhiker, who turned out to be Petitioner, about half a mile from the victims' home. The officers caught Petitioner after a brief chase. They then drove Petitioner to the victims' home, where the victims identified Petitioner as one of the robbers.

The other men were also caught. Murphy testified at trial. He described how the men, armed with a billy bat, sword, and pipe (all of which police found on the back floorboard of the abandoned car), traveled to the house and committed the crime. He said that Petitioner "held the Mexican up with the sword. . . I took the wallet off the dresser and took off running." Lopez and Weeks also testified for the State.

The victims, aided by an interpreter, gave their testimony. Jose testified that the wallet that was taken belonged to him; his brother Orlando's money had been hidden under a sofa. Petitioner, Jose testified, was holding a sword during the robbery. Jose said that he fired a .22 rifle once in the air as the robbers fled. Some of the robbers said there were

multiple shots fired, and one said a bullet whizzed by his head. Orlando testified that he was in the same room when the man entered with weapons and demanded money, but they did not take any of his property. "I was trying to give them some money, but they – all they wanted to do was, I was sitting down and all they wanted to do was hit me, so I just tried to defend myself and pull my hands over my head." He added that the men never actually struck him.

**Habeas Burden**

Each of Petitioner's habeas claims was adjudicated on the merits during the post-conviction process in state court. Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Williams v. Taylor, 120 S.Ct. 1495, 1519-20 (2000). A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010). When a state court has denied a claim on the merits, the AEDPA

bars habeas relief unless the prisoner shows that the state court "erred so transparently that no fairminded jurist could agree with that court's decision." Bobby v. Dixon, 132 S.Ct. 26, 27 (2011) (per curiam).

**Double Jeopardy**

Petitioner argued in his post-conviction application that his rights under the Double Jeopardy Clause were violated when he was punished for both armed robbery and attempted armed robbery, even though he committed only a single criminal act. The trial court denied the claim in a reasoned opinion that pointed out that Louisiana law allows an accused who commits separate and distinct offense during one criminal episode or transaction to be prosecuted for each offense without violating the principles of double jeopardy. The court reasoned that the armed robbery was completed when the wallet belonging to one victim was taken, and the attempted armed robbery was committed on the second victim, who was menaced but did not hand over any money. The two crimes had different victims. Accordingly, the court rejected the claim. Tr. 556-58.

Petitioner filed a writ application with the state appellate court, which denied it in a summary opinion: "On the showing made, the writ is hereby denied." Doc. 1, pg. 55. The Supreme Court of Louisiana also denied a writ application in a brief per curiam opinion that stated, with respect to this and some other claims, "Relator fails to satisfy his post-conviction burden of proof." Doc. 1, pgs. 16-17.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The guarantee applies to the states through the Fourteenth Amendment. It embodies three separate

guarantees: "It protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." Justices of Boston Mun. Court v. Lydon, 104 S.Ct. 1805, 1812 (1984). Petitioner's claim has to be made under the "multiple punishments for the same offense" protection, as the others do not apply.

"With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 103 S.Ct. 673, 678 (1983). The question of what punishments are constitutionally permissible turns on what punishment the legislature intended to be imposed. "Where [the legislature] intended. . . to impose multiple punishments, imposition of such sentence does not violate the Constitution." Albernaz v. U.S., 101 S.Ct. 1137, 1145 (1980). And although the federal court will decide under federal law whether a double jeopardy violation has occurred, it must accept a state court's construction of its own statutes. Hunter, 103 S.Ct. at 679.

Louisiana courts have held that an accused who commits separate and distinct offenses during the same criminal episode may be prosecuted and convicted for each offense without violating the principle of double jeopardy. Louisiana has not adopted a "same transaction" test that would prohibit prosecutions for different crimes committed during one continuing course of conduct. State v. Nichols, 337 So. 2d 1074, 1078 (La. 1976); State v. Bridgewater, 726 So.2d 987, 991 (La. App. 5th Cir. 1998). Similarly, the Supreme Court has "disclaimed any intention of adopting a 'same evidence' test" in double jeopardy cases. U.S. v. Felix, 112 S.Ct. 1377, 1382 (1992). Thus, the undersigned has not

applied the same evidence test in habeas cases. Hampton v. Warden, 2013 WL 5673622 (W.D. La. 2013).

The state court in this case interpreted the relevant statutes to allow convictions for robbery and attempted robbery for one course of conduct that involved two victims.[1] "We are bound to accept the [state] court's construction of that State's statutes." Hunter, 103 S.Ct. at 679. The Louisiana courts have interpreted state laws to allow for multiple convictions when a single act harms multiple victims, so habeas relief on this claim is foreclosed.

The same result was reached in Daniel v. Gordy, 2018 WL 1305464 (N.D. Ala. 2018), where the petitioner was convicted of two murders after he killed two victims with a single shotgun blast. Alabama law authorized multiple murder convictions based on a single act that resulted in deaths to multiple victims, so the claim had no merit under the federal Double Jeopardy Clause. And the Fifth Circuit has rejected a double jeopardy attack in a similar federal prosecution, where the defendant was convicted of robbery and attempted robbery following a single criminal transaction that had two victims. The defendant took property from one victim and attempted to take money from the other. The federal statute, which is quite similar to the Louisiana armed robbery statute, was construed

---

[1] Another example of the Supreme Court of Louisiana allowing multiple convictions where one act harms two victims is found in State v. Smith, 676 So.2d 1068 (La. 1996), where the defendant was convicted of manslaughter and feticide after he choked to death his pregnant girlfriend and her fetus also died. The court concluded that two convictions obtained in a single proceeding avoided double jeopardy concerns because the legislature intended separate punishments for the two deaths in those circumstances.

to allow multiple punishments in that situation, so the two convictions did not violate double jeopardy. US v. Dixon, 273 F.3d 636, 641-42 (5th Cir. 2001).

Finally, the Supreme Court's double jeopardy holdings are often difficult to apply due to the lack of clarity for a given scenario. Habeas relief is only permitted when the state court's decision runs afoul of "clearly established Federal law, as determined by the Supreme Court," as specified in § 2254(d)(1). That law "includes only the holdings, as opposed to the dicta, of this Court's decisions." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015). A lack of clarity in those decisions usually prohibits habeas relief. Lockyer v. Andrade, 123 S.Ct. 1166 (2003). "Where…none of our prior decisions clearly entitles [a habeas petitioner] to the relief he seeks, the 'state court's decision could not be 'contrary to' any holding from this Court.'" Kernan v. Cuero, 138 S. Ct. 4, 9 (2017). Petitioner has not demonstrated that the state court's denial of this post-conviction claim was an unreasonable application of any clearly established Supreme Court double jeopardy precedent, so he is not entitled to habeas relief.

**Ineffective Assistance of Counsel**

    A. Introduction

Petitioner argues that his attorney rendered ineffective assistance of counsel in several ways. To prevail on such a claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

**B. Habeas Burden**

Petitioner's ineffective assistance of counsel claims were adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007). The Strickland standard is a general standard, so a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." Knowles v. Mirzayance, 129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." Harrington v. Richter, 131 S.Ct. 770, 786 (2011). Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system. Id. Thus, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id.

**C. Cross-Examination of Co-Defendants**

Petitioner asserted in his post-conviction application that his co-defendants testified against him because they were threatened by police officers. He complains that counsel did not establish this on cross-examination, nor did counsel cross-examine the co-defendants regarding their prior inconsistent statements. Petitioner also claims that counsel should have cross-examined the victims about how they were threatened that they would be reported to immigration authorities and deported if they did not testify.

Counsel did cross-examine each co-defendant, and he made some good points in support of the defense. He established that Joshua Lopez was also known as Jasmine, who often dressed in female clothes and engaged in prostitution. Counsel established through cross-examination that Jasmine and Petitioner had visited the victims' home earlier that day, when about 20 men were present, and they made around $300, much of which had been used to buy alcohol. There was some testimony that Petitioner had said before the return trip that a robbery was planned, but defense counsel got some of the witnesses to say that they believed the return visit was simply to prostitute Jasmine and make more money. Counsel established supporting facts such as that the door to the house was open, and the two male victims were found in the bedroom with cash. Lopez/Jasmine testified that he was wearing a wig, bra, and black dress, which counsel suggested was not the choice of attire most robbers would make. Counsel also cross-examined both victims. There was, however, no cross-examination or other evidence that any police officers threatened the victims or the co-defendants, each of whom had accepted a favorable plea bargain.

Petitioner first raised these claims in a post-conviction application. The State responded by arguing that Petitioner had no evidence or documentation to support his claim that police officers coerced the witnesses to testify untruthfully. The trial court agreed that Petitioner "has presented no evidence to support his claim that his trial counsel was ineffective in regards to his method or manner of cross-examination of the State's witnesses." The higher courts also denied relief, with the Supreme Court stating that Petitioner "fails to show he received ineffective assistance of counsel under the standard of Strickland[.]"

Petitioner continues to offer only a bare assertion that there was coercion of witnesses that his counsel could have somehow revealed through cross-examination. Plaintiff has also failed to identify any prior inconsistent statements that counsel could have used to impeach the co-defendants. Review of a Strickland claim under Section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011). Petitioner has not pointed to any evidence in the state court record to support this claim, so the state court's rejection of the claim was not an unreasonable application of Strickland.

**D. Uncalled Witnesses**

Petitioner's post-conviction application argued that defense counsel failed to call Petitioner's mother as a witness. He argued that she could provide evidence that the State witnesses were threatened. He represented in his petition that his mother spoke with the victims by phone, and they told her they were threatened. Petitioner's mother offered an affidavit in support of the application. She testified that defense counsel told her she would be put on the stand, but she was never called. She represented that she "had phone records showing that the victim Jose Tecciau called me a few times telling me that he is being threaten (sic) by detectives into pursuing charges against Randall Womack." Petitioner also complains that counsel did not call up his mother's boyfriend, Felix Castro, as a witness.

The state court denied the claim for failure to present supporting evidence and noted that the decision to call a particular witness is a matter of trial strategy. "Claims that counsel failed to call witnesses are not favored on federal habeas review because the

presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain." Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010). A petitioner who makes such a claim must demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and would have done so, setting out the content of the proposed testimony, and showing that the testimony would have been favorable to a particular defense. Id., citing Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009). See also Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2000) (reversing grant of habeas relief for lack of such a showing).

Petitioner did offer an affidavit from his mother in which she said a victim told her that he was being threatened to testify. Counsel likely chose not to call her to try to testify about what the victim allegedly said to her because such testimony would be inadmissible hearsay. The phone records may have been admissible, but they would have shown only that calls were made between two numbers, not the contents of the conversations. Petitioner's mother testified in her affidavit that defense counsel told her that he was going to have Felix Castro come to court, but he did not. There is nothing in the record to suggest what Mr. Castro could have offered to help the defense. (There is some suggestion that he served as an interpreter on the alleged phone calls.) The state court's decision to deny relief on this Strickland claim was not unreasonable.

### E. <u>Bruton</u> Instruction

The <u>Bruton</u>[2] doctrine "addresses the thorny Sixth Amendment problem where one defendant confesses out of court and incriminates a co-defendant without testifying at their joint trial." <u>US v. Gibson</u>, 875 F.3d 179, 194 (5th Cir. 2017). Petitioner argues that counsel was ineffective because he did not ask the judge to give a limiting instruction that the statements offered by the co-defendants could be considered only as evidence against them and not against Petitioner. The state court rejected this <u>Strickland</u> claim, noting the Petitioner's co-participants testified at trial and were subject to cross-examination. Thus, any objection under <u>Bruton</u> would have been meritless. The state court's analysis was correct because <u>Bruton</u> was plainly inapplicable, and "counsel is not required to make futile motions or objections." <u>Garcia v. Stephens</u>, 793 F.3d 513, 525 (5th Cir. 2015), quoting <u>Koch v. Puckett</u>, 907 F.2d 524, 527 (5th Cir.1990).

**Non-unanimous Verdict**

Louisiana recently amended its constitution to require unanimous jury verdicts in all criminal cases. But under the law applicable at the time of Petitioner's trial, he could have been convicted by a vote of ten of twelve jurors. The jury voted unanimously to convict on one count, but the vote was 10-2 on the other.

The Supreme Court has long held that the Sixth Amendment, applicable to the states through the Fourteenth Amendment, does not require jury unanimity for state criminal trials. <u>Johnson v. Louisiana</u>, 92 S.Ct. 1620 (1972); <u>Apodaca v. Oregon</u>, 92 S.Ct. 1628

---

[2] <u>Bruton v. US</u>, 88 S.Ct. 1620 (1968).

(1972) (upholding the validity of non-unanimous jury verdicts for twelve-person juries in Louisiana and Oregon).  But the Court did later hold that a Louisiana conviction by a non-unanimous six-person jury for a nonpetty offense violated the right to trial by jury.  Burch v. Louisiana, 99 S.Ct. 1623 (1979).  Petitioner argues that Burch "implies" that the verdict of a twelve-person jury must also be unanimous.

Petitioner can obtain habeas relief on this claim only if that state court adjudication was contrary to or involved an objectively unreasonable application of "clearly established federal law, as determined by the Supreme Court of the United States."  Section 2254(d)(1); Renico, 130 S.Ct. at 1862.  The justices were unusually divided in their approaches in Johnson and Apodaca.  See McDonald v. City of Chicago, 130 S.Ct. 3020, 3035 n.14 (2010) (describing the various opinions).  Some legal scholars and others take the position that subsequent Supreme Court decisions that discuss how the Bill of Rights apply to the states have undermined Johnson and Apodaca, but the Supreme Court has thus far denied certiorari in cases that sought to overturn those precedents. See, e.g., Barbour v. Louisiana, 131 S.Ct. 1477 (2011), Herrera v. Oregon, 131 S.Ct. 904 (2011), and Jackson v. Louisiana, 134 S.Ct. 1950 (2014).

When Supreme Court precedents exhibit a lack of clarity about the applicable principle, obtaining habeas relief is quite difficult.  Kernan, 138 S. Ct. at 9; Lockyer, 123 S.Ct. at 1174-75. The Supreme Court decisions we have available on non-unanimous juries support the state court's decision in this case. The decisions may be less than clear in rationale and subject to reasonable debate, but that is a long way from making the state court's adjudication contrary to or an objectively unreasonable application of clearly

established Supreme Court precedent. Habeas relief should be denied, as it was when this claim was presented in cases such as Robinson v. Warden, 2016 WL 3200194, *7 (W.D. La. 2016) (Hayes, MJ); Sharp v. Warden, 2011 WL 4551166, *5-6 (W.D. La. 2011) (Hornsby, MJ); Edwards v. Cain, 2018 WL 4375145, *5 (M.D. La. 2018) (Bourgeois, M.J.); and Gillespie v. Wilkinson, 2010 WL 5373931, *9 (E.D. La. 2010) Moore, M.J.).

**Prosecutorial Misconduct**

Petitioner argued in his post-conviction application that the State's witnesses were threatened to be deported or subjected to other threats in order to make them testify. He also complains that the co-defendant witnesses were offered more lenient sentences in exchange for "coerced testimony." The state court denied the claim, noting that the co-participants were represented by counsel and entered guilty pleas as part of plea bargains that were disclosed to the jury at trial. The state court did not specifically address the allegation of threats of deportation of the victims, but the claim was implicitly rejected.

As discussed above, this court's review of a Strickland claim is limited to the record that was before the state court. Petitioner asserted in his petition to the Supreme Court of Louisiana that unspecified witness who testified at trial had recently contacted his family and stated that they were willing to appear at an evidentiary hearing and testify that they were threatened to be deported and were subjected to various other threats by the police to compel their testimony. There is, however, no evidence in the state court record to support these contentions. The state court's denial of these claims was not an objectively unreasonable application of Strickland, so habeas relief must be denied.

Petitioner also complains about the timing of the prosecutor's amendment of the bill of information. The original bill charged Petitioner and the co-defendants with Count 1 (armed robbery of Jose Tecciau) and Count 2 (attempted robbery of Orlando Tecciau). Both counts alleged that the dangerous weapon involved was a knife. Tr. 10. An amended bill was filed just as trial began. It made the same charges but stated that the weapon was a knife, sword, club and/or pipe. Tr. 12.

Petitioner argued in his post-conviction application that this was a surprise tactic that gave the State an unfair advantage because the defense was not given prior knowledge that such weapons existed. The trial judge denied the claim. He stated that La. C.Cr.P. art 487[3] allowed the state to amend the bill prior to the beginning of the trial and "Petitioner was provided with pre-trial discovery listing the specific weapons." Thus, the court found, Petitioner was not prejudiced by the amendment of the bill.

Petitioner has not demonstrated how the state court's adjudication of this claim was an objectively unreasonable application of any clearly established Supreme Court precedent. Furthermore, the adequacy of a charging instrument is determined by state law, and once the issue is presented to the state's highest court, consideration of the issue is foreclosed in federal habeas proceedings. Wood v. Quarterman, 503 F.3d 408, 412 (5th Cir. 2007).

---

[3] Article 487 provides, in part, "The court may at any time cause the indictment to be amended in respect to any such formal defect, imperfection, omission, or uncertainty. Before the trial begins the court may order an indictment amended with respect to a defect of substance." Article 461 states that the term "indictment" includes a bill of information unless it is the clear intent to restrict the word to the finding of a grand jury.

**Inadmissible Evidence**

The State originally dropped the charged against Petitioner. The sheriff's office prepared an affidavit in which Petitioner represented that he authorized the sheriff to destroy certain listed items (billy club, samurai sword, gloves, hunting knife, etc.) and acknowledged that a wallet identified as belonging to Petitioner had been returned to him. Petitioner signed the affidavit, and it was witnessed by deputies. The State later reinstituted the charges and obtained these convictions.

Petitioner argued in his post-conviction application that some of those items were used as evidence at his trial. He argued that the lack of destruction in the month between the execution of the affidavit and reinstitution of charges suggested the investigators acted maliciously towards Petitioner and that the evidence should not have been available or used at trial. He also contends that the affidavit coerced or tricked him into admitting having knowledge or partial ownership of the items. The state court denied the claim on the grounds that it did not fall within one of the grounds allowed by La. C.Cr.P. art 930.3 for obtaining post-conviction relief.

Federal courts do not grant habeas relief based on mere errors in the application of state evidentiary rules or even consider it relevant whether state evidentiary rules were satisfied. Only federal constitutional errors that satisfy the demanding standards of Section 2254 merit habeas relief. The Due Process Clause provides a mechanism for relief when a state court wrongfully admits evidence, but only if the evidence is so unduly prejudicial that it renders the trial fundamentally unfair. Bigby v. Cockrell, 340 F.3d 259, 271-72 (5th

Cir. 2003), citing Dawson v. Delaware, 112 S. Ct. 1093 (1992) and Estelle v. McGuire, 112 S.Ct. 475 (1991).

The affidavit cited by Petitioner did not obligate the State to destroy the evidence; it merely granted Petitioner's permission for the sheriff to do so. Petitioner has not pointed to any evidence rules that would have required exclusion of the plainly relevant items. His claim that he was tricked into admitting ownership or association with the items is defeated by the fact that the affidavit was not used as evidence against him at trial. It is doubtful that Petitioner exhausted or presented a federal constitutional claim related to this argument. To the extent that he did, the claim plainly lacks merit.

Accordingly,

It is recommended that Petitioner's Petition for Writ of Habeas Corpus be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 30th day of January, 2019.

_____
Mark L. Hornsby
U.S. Magistrate Judge